IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:14-CV-0008-D

| | |
|---|---|
| JEFFREY D. HYATT, | ) |
| | ) |
| Plaintiff/Claimant, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND
RECOMMENDATION**

This matter is before the court on the parties' cross-motions for judgment on the pleadings

[DE-19, DE-21] pursuant to Fed. R. Civ. P. 12(c). Claimant Jeffrey D. Hyatt ("Claimant") filed this

action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his

application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing

responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully

reviewed the administrative record and the motions and memoranda submitted by the parties, it is

recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion

for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be upheld.

**I. STATEMENT OF THE CASE**

Claimant protectively filed an application for a period of disability and DIB on May 24, 2010,

alleging disability beginning August 17, 2009. (R. 26, 162-63). His claim was denied initially and

upon reconsideration. (R. 26, 78-110, 112-15). A hearing before the Administrative Law Judge

("ALJ") was held on May 15, 2012, at which Claimant was represented by counsel and a vocational

expert ("VE") appeared and testified. (R. 39-77). On May 24, 2012, the ALJ issued a decision

denying Claimant's request for benefits. (R. 23-38). On June 20, 2013, the Appeals Council granted Claimant's request for review, stating that it intended to issue its own decision in order to correct an error of law in the ALJ's decision (R. 9-13), and Claimant submitted additional evidence in the form of two legal briefs per the instructions of the Appeals Council (R. 237-43). After reviewing and incorporating the additional evidence into the record, the Appeals Council issued a decision on November 14, 2013, determining that Claimant was not disabled. (R. 1-8). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq*., is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial

2

evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520, under which the ALJ is to evaluate a claim:

The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges that the Commissioner erred by: (1) improperly weighing the

3

opinions of Claimant's treating physicians, (2) improperly assessing Claimant's credibility, and (3) failing to consider non-mechanical application of the the Medical Vocational Guidelines (the "Grids"). Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") [DE-20] at 7-10.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

The Appeals Council adopted some of the ALJ's findings, specifically findings one through nine, and reached the same conclusion that Claimant was "not disabled." (R. 5-6). Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 28). Next, the ALJ determined Claimant had the following severe impairments: degenerative disc disease and shoulder pain. *Id.* The ALJ also found Claimant had nonsevere impairments of carpal tunnel syndrome and anxiety. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 29-30). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in no limitations in his activities of daily living, social functioning and concentration, persistence or pace with no episodes of decompensation. (R. 28-29).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform less than the full range of sedentary work with the following limitations: Claimant is able to "occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds, occasionally balance, stoop, kneel and crawl, perform occasional overhead reaching, frequent handling of objects and use a hand held assistance device for uneven terrain and prolong[ed]

4

ambulation."[1] (R. 30). Additionally, the ALJ determined that Claimant "must avoid unprotected heights and would be limited to simple routine repetitive tasks." *Id.* In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 31-32).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a heavy maintenance worker, construction worker, heavy truck driver, mill worker, line erector helper, and tree trimmer helper. (R. 32). The Appeals Council granted review in order to address the ALJ's inaccurate finding as to whether Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy, as the jobs identified in the ALJ's decision are not consistent with the VE's testimony and Claimant's RFC. (R. 10). At step five, upon considering Claimant's age, education, work experience and RFC, the Appeals Council determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 5-6).

## B. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 49 years old and unemployed. (R. 43, 47). Claimant lives with his wife and his 18-year old daughter. (R. 61). Claimant attained an eighth grade education, and took special education reading classes. (R. 43).

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. § 404, Subpt. P, App. 2, Table 1. *Id.*

Claimant testified that he has trouble reading big words, and that it took him ten years to complete the eight grades because he failed a couple of grades. (R. 44-45). After the eighth grade, Claimant quit school and went to work, and did labor work from when he was 15 or 16 until 2009. (R. 43, 47). Even though Claimant stopped working in August of 2009, he received some income in 2010 because he had accumulated sick time and vacation days. (R. 48).

Claimant was last employed with the state of North Carolina as a transportation worker for approximately ten years, where his duties included performing general labor (such as putting down driveways and shoveling) and driving a truck. (R. 44). Claimant had a commercial driver's license ("CDL") through the state of North Carolina in order to drive trucks for his job, but his CDL included a stipulation that he was not able to drive tractor trailers. *Id.* Claimant took a written test in order to get his CDL, but the test administrators read the test questions to him. *Id.* Claimant's past work experience also includes positions digging foundations and as a millwright helper, helping to move machinery. (R. 43-44). Claimant testified that he had paperwork to complete when he worked for the state. (R. 45). Claimant would take the forms home at night so that his wife could help him fill out the paperwork. *Id.* Claimant had his wife write down in a little book many of the phrases Claimant had to use on his work forms, and because most of the paperwork was repetitive, he was able to "cheat" and fill them out by using the book. (R. 45-46).

Claimant described having several surgeries–two back surgeries, two right arm surgeries, and one left arm surgery (R. 53). Claimant had carpal tunnel surgery on his right hand and shoulder surgery to remove a bone spur from his right shoulder. (R. 46). Claimant had back surgery in 2008 and then returned to work for about ten months. (R. 46-47). Claimant testified that he had some back issues beginning in 2009. *Id.* Claimant's back had begun hurting again, and he injured himself

6

further while working. (R. 47). Claimant testified that he "was jarred on the a-boom" while working, and stopped working after August 16 or 17, 2009 because of his low back pain. (R. 47, 49). After Claimant stopped working, he had a second back surgery in April of 2010. (R. 47-48). Between August of 2009 and April 2010, Claimant saw his doctors for pain management. (R. 49-50). After a discogram revealed problems above the site of Claimant's previous back surgery, Claimant had his second surgery. (R. 50). Claimant testified that his back pain improved on his right side after the second surgery, but he still has pain on his left side spreading down into his hip and foot. (R. 47). Claimant testified that after his second surgery, he tried physical therapy and pain management shots, which did not help with his pain, and was then prescribed pain medication, which "helped some." (R. 51). Claimant was also prescribed a hard plastic brace, which he wore for about six months but could not continue wearing in the summer because he does not have air conditioning and the brace was too hot. (R. 52).

Claimant testified to currently having left shoulder pain, which is due to carpal tunnel syndrome in his left hand. *Id.* Claimant had surgery for his carpal tunnel syndrome in 2011, and has not regained feeling in the tip of his left ring finger. (R. 52-53). Claimant also received a cortisone shot for his left shoulder pain, but does not remember which condition he was diagnosed with to describe his left shoulder pain. (R. 53).

Claimant testified that he still has back pain, which runs down his left side through his hip and leg, down to his foot. (R. 54). This pain "feels like little needles running," and Claimant has experienced it since his first back surgery. *Id.* Claimant testified that the second surgery helped with this pain in his right leg, but not his left leg. *Id.* Claimant also described having pain in his right arm and shoulder. *Id.* Claimant had received a cortisone shot for right shoulder pain about three weeks

7

ago, but since then his shoulder pain has spread down through his elbow and hand. *Id.* Claimant testified that his left shoulder pain comes and goes, and after a cortisone shot, his left shoulder pain has been gone for two or three months. (R. 55). Claimant also has asthma and has to use an inhaler twice a day, in addition to carrying around a regular spray. *Id.* Claimant testified that he had heart tests performed recently, which revealed that his heart does not pump enough blood in, and that he has a follow-up appointment the week after his hearing. (R. 55-56). Claimant is currently taking a water pill to relieve the fluid build-up around his heart, amytriptylene because he has trouble sleeping due to the pain he experiences when he is sitting or lying down, and a blue pill for anxiety. (R. 56-57).

On a normal day, Claimant testified that there is not much he can do. (R. 57). Claimant might go to the mailbox, which is located 200 yards from his house, once or twice a week. *Id.* Claimant tries to mow his lawn sometimes using a riding law mower, but testified that it hurts his back too much and he has to stop. (R. 57-58). Claimant has between a quarter and a half acre of property, and has been getting his daughter or his son-in-law to take care of the yard recently. (R. 58). Claimant testified that he generally sleeps three hours during the day and three hours at night. *Id.* Claimant's pain makes it difficult to sit or lie down, and the water pill he takes causes him to get up during the night to use the restroom. (R. 58-59). Claimant testified that he cannot sit in a recliner, and has to sit upright on the edge of his chair. (R. 59). Claimant stated that he cannot lie back and has difficulty sitting in a car seat. *Id.* Claimant's wife drove him to the hearing. *Id.* Claimant might drive two miles from his house to town once every two weeks. (R. 60). Claimant testified that once or twice a week when his wife works late, he will try to make her a sandwich or a fried pork chop. *Id.* But Claimant testified that he cannot stand over the stove for long enough to

8

cook a whole meal. *Id.*

Claimant testified that he can sit for 45 minutes, stand for 10-15 minutes, and that he has to use a cane when he walks. (R. 60-61). Claimant is right-handed and has more problems with that hand, but he does hold his cane in his right hand until it hurts and he has to switch to using his left hand. (R. 62). Claimant testified that he could lift eight to ten pounds with his right hand, but could not carry that amount of weight very far. *Id.* Claimant also has a weak grip in his right hand, and has dropped drinking glasses when he tries to hold them. (R. 63). Claimant's right shoulder hurts and the pain spreads into his hands if he raises his right arm all the way up, but he is able to raise his right arm halfway. (R. 63-64). Claimant testified that before he got his cane he fell a couple of times while walking to his mailbox, and using the cane helps him keep his balance. (R. 64).

Claimant testified that he has received disability from the state for three years, and that if he receives DIB he will have to pay back the state for those benefits he received. (R. 63).

## C.    Vocational Expert's Testimony at the Administrative Hearing

David Boatner testified as a VE at the administrative hearing. (R. 65-74). After the VE's testimony regarding Claimant's past work experience (R. 65-67), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed three hypothetical questions. First, the ALJ asked whether the individual could perform Claimant's past relevant work assuming the individual has the physical capacity to perform light work involving "occasional climbing ladders, ropes, or scaffolds, frequent climbing ramps or stairs, occasional balancing, stooping, frequent crouching, kneeling, and crawling; frequent overhead reaching, frequent handling of objects; avoiding concentrated exposure to unprotected heights, and work limited to simple, routine, repetitive tasks." (R. 67). The VE responded in the negative, but

9

indicated that such a hypothetical individual could perform most of the jobs in the unskilled light-rated base, specifically gluer (DOT #795.687-014), small parts assembler (DOT # 706.684-022), and hand cutter (DOT #751.684-014). (R. 67-68). Second, the ALJ asked whether the individual could perform Claimant's past relevant work assuming the individual can perform light work with "no climbing ladders, ropes, or scaffolds, occasional climbing ramps or stairs, occasional balancing, stooping, crouching, kneeling, and crawling; occasional overhead reaching, frequent handling of objects; avoiding concentrated exposure to unprotected heights, and work limited to simple, routine, repetitive tasks" and "limited to jobs that can be performed while using a hand held [sic] assistive device for uneven terrain or prolonged ambulation." (R. 69). The VE responded in the negative and added that most of the jobs identified in the first hypothetical would also apply. (R. 69-70). The VE further added that use of the hand-held device for prolonged ambulation would not be a significant limit because the identified jobs require standing and being in the same work area during the workday. (R. 70).

Third, the ALJ asked whether the individual could perform Claimant's past relevant work assuming the individual can perform sedentary work with "no climbing ladders, ropes, or scaffolds, occasional climbing ramps or stairs, occasional balancing, stooping, crouching, kneeling, and crawling; again occasional overhead reaching, frequent handling of objects; again same use of the cane for uneven or prolonged–uneven terrain or prolonged ambulation, and then avoiding concentrated exposure to unprotected heights" and "limited to simple routine repetitive tasks." *Id.* The VE responded in the negative, but opined that such an individual would be able to perform most of the occupational base of unskilled sedentary jobs, reduced by about 25 percent to eliminate jobs requiring constant use of the upper extremities. (R. 70-71). This would include the positions of

10

table worker (DOT # 739.687-182), taper jobs (DOT # 017.684-010), and hand mounter jobs (DOT # 976.684-018). (R. 71-72). The ALJ asked whether an individual would be able to work if due to a combination of medical conditions and associated pain that individual would need to be off task for more than an hour a day, in addition to regularly-scheduled breaks, and the VE responded in the negative. (R. 72). Finally, the ALJ asked whether an individual would be able to work if due to a combination of medical conditions and associated pain the person were to miss more than two days of work a month, and the VE responded in the negative. (R. 72-73).

Claimant's attorney asked whether the third hypothetical of sedentary work would change if the limitation of "only occasional handling and fingering with the dominant hand" were added. (R. 73). The VE responded that his answer would change, as such an individual could not perform any unskilled sedentary jobs. *Id.* Claimant's attorney also asked whether the third hypothetical would change if the limitation of avoiding exposure to fumes, dust, or gases were added, and the VE responded that his answer would not change. (R. 73-74). Finally, Claimant's attorney asked whether the third hypothetical would change if the individual had the following limitations: "add the reading and writing level down to one, or not needing to write anything more than basic words, or read anything more than basic words." (R. 74). The VE responded that none of the identified jobs would be eliminated, as none of them involve written instructions or writing requirements. *Id.*

## V. DISCUSSION

### A. The Commissioner's Assessment of the Opinions of Claimant's Treating Physicians

Claimant contends that the ALJ erred by rejecting the medical opinion of Claimant's treating physician, Dr. Fleming, without considering the factors laid out in 20 C.F.R. § 404.1527 and by stating in a conclusory fashion that "the objective evidence does not support these severe limitations"

11

without citing to specific evidence of record. Pl.'s Mem. at 7. Further, Claimant contends that the ALJ erred by failing to mention the opinion of Dr. Melin, Claimant's treating surgeon, which is consistent with Dr. Fleming's opinion. *Id.* Defendant responds that the ALJ's assessment of Dr. Fleming's opinion is supported by substantial evidence and the ALJ did not err by failing to list each factor from 20 C.F.R. § 404.1527 individually. Def.'s Mem. Supp. Def.'s Mot. J. Pleadings ("Def.'s Mem.") [DE-22] at 11-12. Defendant also argues that Dr. Melin's opinion is mere speculation and is "a conclusory, conditional statement on an issue that is reserved to the Commissioner" and is not entitled to any special significance. *Id.* at 14.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. *Id.* § 404.1527(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted).

If the ALJ determines that a treating physician's opinion should not be considered

12

controlling, the ALJ must then analyze and weigh all the medical opinions of record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, (5) whether the physician is a specialist, and (6) any other relevant factors. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citation omitted); *Ware v. Astrue*, No. 5:11-CV-446-D, 2012 WL 6645000, at \*2 (E.D.N.C. Dec. 20, 2012) (unpublished) (citing 20 C.F.R. § 404.1527(c)(2)). The ALJ is not required, however, to discuss all of these factors. *Ware*, 2012 WL 6645000, at \*2 (citing *Oldham v. Astrue*, 509 F. 3d 1254, 1258 (10th Cir. 2007); *Munson v. Astrue*, No. 5:08-CV-110-D(3), 2008 WL 5190490, at \*3 (E.D.N.C. Dec. 8, 2008) (unpublished)). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at \*8 (W.D. Va. Sept. 5, 2006) (unpublished), she must nevertheless explain the weight afforded such opinions. *See* S.S.R. 96-2p, 1996 WL 374188, at \*5 (July 2, 1996); S.S.R 96-6p, 1996 WL 374180, at \*1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at \*8.

Medical opinions are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis, and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Medical records, while constituting evidence which the ALJ must consider, are "not necessarily 'medical opinion' evidence as contemplated by the regulations." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5366967, at \*11 (E.D.N.C. Aug. 30, 2013), *memorandum*

13

*and recommendation adopted by* 2013 WL 5350870 (E.D.N.C. Sept. 24, 2013) (unpublished).

Therefore, "[o]nly those statements . . . that reflect judgments regarding a claimant's prognosis or

limitations, or the severity of symptoms," and not those which merely report subjective complaints

of the claimant's pain, constitute medical opinions as defined in the regulations. *Id.* (citing

*McDonald v. Astrue*, 492 F. App'x 875, 884 (10th Cir. 2012) (unpublished); *Valdez v. Comm'r of

Social Sec.*, No. 12-13215, 2013 WL 3013668 (E.D. Mich. June 18, 2013) (unpublished)).

## 1. Dr. Fleming's Opinion

Claimant argues that the ALJ erred by rejecting Dr. Fleming's May 10, 2012 opinion in a

conclusory fashion without citing to specific evidence and without proper consideration of the 20

C.F.R. § 404.1527 factors. Pl.'s Mem. at 7. The ALJ explicitly discussed Dr. Fleming's opinion,

expressed on a Social Security Administration Functional Capacities Evaluation form (R. 565-76),

that Claimant "could lift and carry less than 10 pounds, stand and walk less than two hours and sit

for three hours during an eight-hour day alternating between sitting, standing and walking to relieve

discomfort" and that Claimant "would need to lie down at unpredictable intervals" as a result of his

back pain. (R. 32). The ALJ afforded this opinion "little weight," stating that "the objective

evidence does not support these severe limitations." *Id.* Contrary to Claimant's arguments, the

ALJ's assessment of Dr. Fleming's opinion is in accordance with the regulations and is supported

by substantial evidence.

Here, the ALJ thoroughly discussed Claimant's post-surgery treatment notes showing that

Claimant's back surgery "was generally successful in relieving [his] symptoms," and the record

evidence supports the ALJ's discussion. (R. 31). Specifically, the ALJ noted that in April 2010,

Claimant "stated that he was doing well with some intermittent pain down his leg" and had good

14

strength in both lower extremities, an intact gait, and his straight leg raise was negative bilaterally (R. 31, 290-91); in June 2010 Claimant "reported some residual right leg discomfort; however he noted significant improvement of his leg pain from presurgical," the hardware and spine graft were in excellent position, and Claimant appeared stable and again had good strength in both lower extremities (R. 31, 284-85); in August 2010 Claimant "reported significant improvement in his right leg and was very happy with the leg discomfort he had remaining," "noted continued back pain," and had full strength in both lower extremities, an intact gait, and his straight leg raise was negative bilaterally (R. 31, 395-96). Further, the ALJ discussed a treatment note from September 2010, where Claimant "reported that his pain was controlled much better with his medication changes" and Claimant "indicated that he is able to help more around the house with cleaning and washing dishes." (R. 31, 403-04). This thorough discussion of the medical evidence of record demonstrating that Claimant recovered well after his back surgery and was experiencing improved relief from his symptoms constitutes substantial evidence supporting the ALJ's decision to afford "little weight" to Dr. Fleming's May 10, 2012 opinion, given that it is not supported by objective medical evidence. (R. 31).

Additionally, Claimant's argument that the ALJ failed to consider the factors laid out in 20 C.F.R. § 404.1527 in weighing Dr. Fleming's opinion is without merit. The ALJ's discussion of Claimant's treatment records detailing Claimant's improvement after his back surgery demonstrates that the ALJ considered the supportability and consistency of Dr. Fleming's opinion. And further, the ALJ is not required to discuss all of the factors explicitly. *Ware*, 2012 WL 6645000, at *2 (citations omitted). Accordingly, substantial evidence supports the ALJ's consideration of Dr. Fleming's May 10, 2012 opinion and his decision to afford it little weight.

15

## 2. Dr. Melin's Opinion

Claimant alleges that the ALJ erred by failing to mention the opinion of Dr. Melin, Claimant's treating surgeon, which is consistent with Dr. Fleming's opinion. Pl.'s Mem. at 7. Claimant specifically identifies Dr. Melin's opinion at pages 284-85 of the record, which states "I am unsure if [Claimant] will be able to maintain gainful employment, given the severity of his back pain; however I am hoping that pain management can benefit him." *Id.* As an initial matter, this statement is not a "medical opinion" as contemplated by the Social Security Regulations. Dr. Melin's statement here does not reflect his judgment about the nature and severity of Claimant's impairments, what Claimant is able to do despite these impairments, or any physical or mental restrictions Claimant may have. 20 C.F.R. § 404.1527(a)(2). Dr. Melin's statement is forward-looking and simply speculates what may happen to Claimant pending future treatment, and as such is not a medical opinion as contemplated by the regulations. *See Hitchens v. Colvin*, No. 7:13-CV-40-FL, 2014 WL 6977765, at *3 (E.D.N.C. Dec. 9, 2014) (unpublished) (determining that medical reports submitted by Claimant were not medical opinions as defined by the Social Security Regulations); *Love-Moore*, 2013 WL 5366967, at *11-12 (distinguishing between treatment notes and medical opinions).

Further, to the extent that Claimant argues that the ALJ did not consider Dr. Melin's opinion as consistent with Dr. Fleming's opinion, this argument is without merit. As discussed above, the ALJ is not required to explicitly discuss each factor laid out in 20 C.F.R. § 404.1527 in his opinion. *Ware*, 2012 WL 6645000, at *2 (citations omitted). Additionally, the ALJ thoroughly discussed Dr. Melin's treatment notes in assessing Claimant's RFC. (R. 31). *Hitchens*, 2014 WL 6977765, at *4 (even though the ALJ did not explicitly weigh treatment notes prepared by a claimant's treating

16

physician, "the court can infer from the ALJ's opinion that he relied on them in making the RFC determination" where the ALJ discussed the treatment notes at length). Accordingly, the ALJ did not err in assessing Dr. Melin's opinion.

## B.    The Commissioner's Assessment of Claimant's Credibility

Claimant contends that the ALJ erred in assessing Claimant's credibility. Pl.'s Mem. at 8. Specifically, Claimant argues that he has met his burden of proof under *Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006) as he has significant lumbar degenerative disc disease which has left him with chronic pain syndrome, and the ALJ should have found Claimant "credible regarding the severity and limiting effects of his pain." *Id.* Further, Claimant argues that "the only argument that would overcome [Claimant's] assumption of credibility under *Hines* would be citation to evidence in the record of activities performed by [Claimant] which demonstrate that he is capable of doing more than he claims." *Id.* Defendant responds that the ALJ did not err by not finding Claimant fully credible where Claimant's subjective allegations of pain were inconsistent with objective record evidence. Def.'s Mem. at 12-14.

At 20 C.F.R. § 404.1529(a), the Social Security Regulations provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology. *See Craig*, 76 F.3d at 593. Under the Regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* S.S.R. 96-7p, 1996 WL 374186, at *2 (July 2, 1996). If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *Id.* at 595. The

17

step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R. § 404.1529(c)(3); S.S.R. 96-7p, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because his subjective complaints are not substantiated by objective medical evidence. *See id.* at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 WL 374186, at *2.

In *Hines*, the claimant suffered from sickle cell anemia, where "pain is often the only or main symptom of an acute episode of illness." *Hines*, 453 F.3d at 561. The *Hines* court explained that "there is no way to demonstrate objectively that a [sickle cell disease] patient has pain," and "with pain from sickle cell disease there are no confirmatory laboratory or radiologic tests that will prove or disprove whether a patient is having pain." *Id.* at 561-62. Ultimately, the *Hines* court determined that the ALJ erred by discrediting the claimant's testimony about his limitations due to pain as a result of inconsistency with the claimant's testimony about his daily activities. *Id.* at 565-66. The *Hines* court determined that the record revealed no inconsistency between the testimony about claimant's limitations and his activities of daily living, and "[t]he ALJ selectively cited evidence concerning tasks which [claimant] was capable of performing." *Id.* at 565. However, the court also cited to *Craig* for the proposition that while "a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its

18

severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment . . . ." *Id.* at 565 n.3 (quoting *Craig,* 76 F.3d at 595). Accordingly, where a claimant's impairments can "be measured and documented through objective evidence in examination findings, tests, and medical evidence," that evidence is properly considered by the ALJ and the ALJ need not accept a claimant's subjective complaints of pain where those complaints are inconsistent with the objective medical evidence. *Melvin v. Astrue,* No. 7:11-CV-131-FL, 2012 WL 4447607, at *4-5 (E.D.N.C. Sept. 25, 2012) (unpublished) (holding that the ALJ properly evaluated claimant's credibility where her subjective complaints of pain were inconsistent with the objective medical evidence); *accord Worthington v. Astrue,* No. 7:11-CV-207-FL, 2012 WL 4026067, at *4-6 (E.D.N.C. Sept. 12, 2012) (unpublished); *Cannon v. Astrue,* No. 4:10-CV-177-FL, 2011 WL 6842990, at *4 (E.D.N.C. Dec. 29, 2011) (unpublished); *McLamb v. Astrue,* No. 5:08-CV-305-FL, 2009 WL 2046062, at *2, 8-9 (E.D.N.C. July 14, 2009) (unpublished).

Here, Claimant relies on *Hines* to argue that because he has chronic pain syndrome as a result of his degenerative disc disease, he should have been found credible regarding the severity and limiting effects of his pain, and the only evidence sufficient to overcome this assumption of credibility would be evidence of Claimant performing activities inconsistent with his claimed limitations. Pl.'s Mem. at 7-8. Claimant's argument is without merit. The ALJ is entitled to discredit Claimant's subjective complaints of pain where the objective medical evidence contradicts Claimant's complaints. *Craig,* 76 F.3d at 595. In the instant case, unlike in *Hines,* there is objective medical evidence contradicting Claimant's subjective complaints of back pain. The ALJ considered Claimant's hearing testimony related to his back pain, specifically noting that:

[C]laimant testified that he has pain in his low back with pain down his left side that

19

extends into his hip and foot. He reported undergoing pain management, physical therapy and cortisone injections that provided some relief. He noted that he has pain upon sitting for more than five minutes, standing for more than ten minutes and pain upon walking. He uses a cane for balance and walking. He reported that he wore a brace for approximately six months for his back pain.

(R. 30-31).

Then, as discussed above, the ALJ thoroughly discussed Claimant's post-surgery treatment records which demonstrate that Claimant's back surgery "was generally successful in relieving [his] symptoms." (R. 31). These medical records demonstrate that on several occasions Claimant had a negative bilateral straight leg raise, an intact gait, and good strength in his lower extremities (R. 290-91, 395-96), Claimant's hardware and spine graft were in an excellent position (R. 284-85), and Claimant reported that his pain was controlled by medication changes and he was able to be more active by helping with household tasks (R. 403-04).

It is within the province of the ALJ to determine credibility, and in fulfilling that function, the ALJ is entitled to consider inconsistencies between a claimant's testimony and the record evidence. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). Here, where the ALJ detailed the relevant facts underlying his determination that Claimant's testimony was not fully credible, the credibility analysis is entitled to substantial deference. *See Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984) (citation omitted). The ALJ properly evaluated Claimant's subjective complaints of back pain by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record, and Claimant's own testimony. In determining whether the ALJ's decision is supported by substantial evidence, this court cannot re-weigh the evidence or make credibility determinations. *Craig*, 76 F.3d at 589.

Accordingly, the ALJ did not err in assessing Claimant's credibility.

## C.  The Commissioner's Consideration of Non-Mechanical Application of the Grids

Claimant argues that the Commissioner erred by failing to consider non-mechanical application of the Grids where Claimant turned 50 years old less than three months after the ALJ's decision. Pl.'s Mem. at 9. Claimant argues that Rule 201.10 (20 C.F.R. Pt. 404, Subpt. P, Appendix II § 201.10) would have directed a finding of disabled were the grids non-mechanically applied where he has a history of heavy past relevant work without transferrable skills, a limited eighth grade education, and a sedentary RFC. *Id.* Further, Claimant argues that his use of a cane and functional illiteracy are adverse vocational factors justifying non-mechanical application of the grids. *Id.* at 9-10. Defendant responds that Claimant does not have any additional vocational adversity that would justify applying a higher age category. Def.'s Mem. at 15-18.

At step five, the Commissioner bears the burden of demonstrating that work Claimant is capable of performing exists in significant numbers in the national economy. *See Pass*, 65 F.3d at 1203 (explaining the claimant bears the burden on the first fourt steps of the sequential evaluation and the burden shifts to the Commissioner at step five) (citation omitted). The Grids will direct the disability determination "[w]hen a claimant suffers from exertional limitations and the facts of his vocational profile meet all the criteria of a particular rule in the tables of Appendix 2. *Gory v. Schweiker*, 712 F.2d 929, 930 (4th Cir. 1983) (citing 20 C.F.R. Pt. 404, Subpt. P., App. 2 § 200.00(a); *Heckler v. Campbell*, 461 U.S. 458, 462 (1983)). "When a claimant suffers from both exertional and nonexertional limitations, the tables are not conclusive but may only serve as guidelines." *Id.* at 931 (citing 20 C.F.R. Pt. 404, Subpt. P. App. 2 § 200(e)(2); *Roberts v. Schweiker*, 667 F.2d 1143 (4th Cir. 1981)).

The Social Security Regulations use three age categories defined in 20 C.F.R. § 404.1563 to guide ALJs in their disability determinations: "(1) younger persons (those under fifty); (2) persons closely approaching advanced age (those between fifty and fifty-four); and (3) persons of advanced age (those fifty-five and older)." *Mitchell v. Astrue*, No. 3:10-CV-544-RJC-DSC, 2011 WL 5037134, at *1 (W.D.N.C. Oct. 24, 2011) (unpublished) (internal quotations and citations omitted). If a claimant is in a borderline situation, or "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [claimant is] disabled, [the Commissioner] will consider whether to use the older age category after evaluating the overall impact of all the factors of [the] case." 20 C.F.R. § 404.1563(b); *see also* S.S.R. 82-46c, 1982 WL 31427 (1982); Program Operations Manual System ("POMS") § DI 25015.005, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425015005 (last visited Feb. 2, 2015). However, the ALJ is not required to automatically apply the older age category. *See* 20 C.F.R. § 404.1563(b). As the Grids "fully consider the relative adversities of a claimant's exertional capabilities, age, education, and work experience," an ALJ must "find additional vocational adversities in RFC, education, or work experience (beyond those already considered in the rules) to support a determination to use the next higher age." POMS § DI 25015.005, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425015005 (last visited Feb. 2, 2015).

As an initial matter, this case is distinguishable from the cases cited by Claimant in support of his argument. Pl.'s Mem. at 9. Those cases were remanded because the ALJ failed to consider applying a higher age category entirely in a borderline situation. *See, e.g.*, *Ford v. Heckler*, 572 F. Supp. 992, 994 (E.D.N.C. 1983); *Bush v. Astrue*, No. 5:06-00766, 2008 WL 867941, at *8 (S.D. W. Va. Mar. 28, 2008) (unpublished). Here, the Appeals Council noted that Claimant turned 50

approximately three months after the ALJ's decision, but determined that there were not "sufficient vocational adversities to justify not employing the claimant's chronological age when applying the medical-vocational rules." (R. 6). Thus, the Commissioner clearly considered whether to apply a different age category. Claimant disagrees with the Appeals Council's determination that there are no vocational adversities, and argues that he has two adverse vocational factors which would warrant non-mechanical application of the grids: functional illiteracy and use of a cane. Pl.'s Mem. at 10.

## 1.    Functional Illiteracy

POMS § DI 25001.001B.2 gives three situations where illiteracy can be considered an additional adversity: (1) when using a special medical-vocational profile as listed in POMS § DI 25010.001, (2) "if an individual is a few days to a few months of attaining advanced age, has a medium RFC and no past relevant work," or (3) if the individual "is a few days to a few months of 'closely approaching retirement age [60],' has a medium RFC, cannot do past work, and has unskilled or no work experience (medical-vocational rules 203.10, 203.02, 203.01)." POMS § DI 25001.001B.2, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001#b2 (last visited Feb. 2, 2015). Aside from these three situations, illiteracy "will already be material to the allowance and cannot be used again as an additional adversity." *Id.* Here, Claimant is excluded from the second and third categories as he was 49 at the time of the ALJ's decision, had a RFC of less than the full range of sedentary work, and the majority of his past relevant work was semi-skilled. (R. 30-32, 65-67).

Claimant also fails to meet one of the three special medical-vocational profiles. POMS § DI 25010.001, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425010001 (last visited Feb. 2, 2015). The first profile is for "arduous unskilled work" and requires that the individual have a history of at least

23

35 years of arduous unskilled work and have no more than a marginal education. *Id.* Arduous work is generally classified as heavy and is "physical work requiring a high level of strength or endurance" and a marginal education is "formal schooling completed at a level of 6th grade or less." POMS § DI 25001.001, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001 (last visited Feb. 2, 2015). Here, Claimant is excluded because he completed the eighth grade and most of his work history is classified as medium. (R. 43, 65-66). While some of Claimant's past work (construction worker, millwright helper, and tree trimmer helper) was classified as heavy (R. 66-67), Claimant only worked in these positions for five years total (R. 187).

The second special profile is for "no work experience" and applies to individuals who are at least 55, have no past relevant work, and have no more than a limited education. POMS § DI 25010.001, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425010001 (last visited Feb. 2, 2015). Limited education is "formal schooling completed at a level of 7th through 11th grade." POMS § DI 25001.001, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001 (last visited Feb. 2, 2015). While Claimant's eighth-grade education (R. 43) places him in the limited education category, Claimant is excluded from this profile because he was only 49 at the time of the hearing and has past relevant work. (R. 32).

The third special profile is for "lifetime commitment" and applies to individuals who are at least 60 and have no more than a limited education, and who "have a lifetime commitment (30 years or more) to a field of work that is unskilled, or is skilled or semi-skilled but with no transferable skills." POMS § DI 25010.001, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425010001 (last visited Feb. 2, 2015). Here, while Claimant has a limited education (R. 43) and most of his work history has been in construction and labor work (R. 65-67), he is excluded from this profile as he was only

24

49 at the time of the ALJ hearing (R. 32).

Accordingly, where Claimant does not meet any of the situations where illiteracy is properly considered as an adverse vocational factor, the Commissioner did not err by not considering Claimant's functional illiteracy as an adverse vocational factor justifying non-mechanical application of the grids. POMS § 25001.001B.2, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001#b2 (last visited Feb. 2, 2015).

## 2. Use of a Cane

Functional limitations which infringe upon, but do not substantially reduce "a claimant's remaining occupational base" may constitute an additional adverse vocational factor. POMS § DI 25015.005D.2, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425015005 (last visited Feb. 2, 2015). In the instant case, Claimant testified that he uses a cane to help him walk. (R. 61). The ALJ included the use of a "hand-held assistive device for uneven terrain or prolonged ambulation" in his hypotheticals to the VE. (R. 69-70). The Commissioner has discussed the impact of a hand-held assistive device on the occupational base of sedentary unskilled work, noting that "an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand." S.S.R. 96-9p, 1996 WL 374185, at *7. The Commissioner directs the ALJ to "consider the particular facts of a case," and notes that "it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work." *Id.* Here, the ALJ followed the proper procedure by including Claimant's use of a cane for balancing and walking in the hypotheticals to the VE, to determine whether this would erode the unskilled sedentary occupational base. (R. 69-70). The VE stated that he was reducing the occupational base

25

by about 25 percent, "to eliminate the jobs that require constant use of the upper extremities." (R. 70-71). There is no mention, however, of the occupational base being reduced or infringed to account for Claimant's use of a cane. *Id.* Accordingly, where Claimant's use of a cane does not infringe or reduce the occupational base, the Commissioner did not err in determining that Claimant's use of a cane is not an adverse vocational factor justifying non-mechanical use of the grids. POMS § DI 25015.005D.2, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425015005 (last visited Feb. 2, 2015).

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-19] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-21] be ALLOWED, and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the **3** day of February, 2015.

Robert B. Jones, Jr.
United States Magistrate Judge

26